[Civ. No. 5017. First Appellate District, Division Two.—November 18, 1924.]

WILLIAM M. ABBOTT et al., etc., Petitioners, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO, et al., Respondents.

[1] MANDAMUS — PERFORMANCE OF AN ACT — ISSUANCE OF WRIT. — A writ of mandate should not issue except "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office," etc.

[2] DIVORCE—FINAL DECREE—MOTION BY EXECUTOR OF WILL OF DECEASED SPOUSE—MANDAMUS.—Section 132 of the Civil Code does not "specially enjoin" a trial court to grant a motion to enter a final decree in a divorce action when the motion is made by the executor of the will of a deceased spouse.

[3] MANDAMUS—PLAIN, SPEEDY, AND ADEQUATE REMEDY AT LAW.—A writ of mandate will not issue when the petitioners have a plain, speedy, and adequate remedy at law.

[4] DIVORCE—PROPERTY RIGHTS—ADJUDICATION IN INTERLOCUTORY DECREE.—Parties to a divorce action may wholly omit, or in part

---

1. Duties the performance of which may be compelled by *mandamus*, note, 125 Am. St. Rep. 492. See, also, 18 R. C. L. 116; 16 Cal Jur. 764.

2. See 9 R. C. L. 444; 9 Cal. Jur. 766.

4. See 9 Cal. Jur. 756.

omit, to cause their property rights to be adjudged in the interlocutory decree, or they can cause such rights to be adjudged in such interlocutory decree.

[5] ID. — INTERLOCUTORY DECREE — ATTACK UPON — TIME. — As to all matters contained in the interlocutory decree of divorce every attack can be made that can be made on a final decree in any other kind of a suit, but each and every such attack must be made within the time prescribed by the statute.

[6] ID.—STATUS OF PARTIES—EFFECT OF INTERLOCUTORY DECREE.—As a decree adjudging the status of the parties, the interlocutory decree is not operative because the statute is so written.

[7] ID. — PROPERTY RIGHTS — INTERLOCUTORY DECREE — TIME. — When each and every period has expired within which an attack could have been made by motion or by appeal, then and in that event the so-called interlocutory decree of divorce, in so far as it adjudges the property rights of the parties, becomes a conclusive decree.

[8] ID.—MOTION FOR FINAL DECREE—WHO MAY MAKE.—A final decree of divorce may be entered on the motion of either spouse or by the court of its own motion; but no authority is given by the statute to any other person to make the motion.

[9] ID.—PROPERTY RIGHTS—INTERLOCUTORY DECREE—DEATH OF SPOUSE BEFORE ENTRY OF FINAL DECREE.—When the interlocutory decree is silent as to property rights and deals solely with the status of the parties, and when no final decree is entered before the death of one of the spouses, the interlocutory decree becomes *functus officio*, but when the interlocutory decree deals with the status of the parties and also with the property rights of the parties, if not vacated in the mode prescribed by law, it becomes a conclusive decree as to their property rights.

[10] ID. — PROPERTY RIGHTS — CONTRACT NOT ADOPTED BY INTERLOCUTORY DECREE.—An interlocutory decree of divorce dealing with the property rights of the parties but not adopting as a part thereof a contract theretofore made and entered into by the parties becomes a conclusive decree as to property rights, if not vacated in the mode prescribed by law.

(1) 38 C. J., p. 600, sec. 75.   (2) 38 C. J., p. 636, sec. 139.   (3) 38 C. J., p. 558, sec. 31.   (4) 19 C. J., p. 185, sec. 457.   (5) 19 C. J., p. 338, sec. 783.   (6) 19 C. J., p. 185, sec. 457.   (7) 19 C. J., p. 185, sec. 457.   (8) 19 C. J., p. 159, sec. 402.   (9) 19 C. J., p. 185, sec. 457.   (10) 19 C. J., p. 185, sec. 457.

5.   See 9 Cal. Jur. 762.
6.   See 9 Cal. Jur. 757.
7.   See 9 Cal. Jur. 760.
8.   See 9 Cal. Jur. 766.

PROCEEDINGS in Mandamus to compel the Superior Court of the City and County of San Francisco to enter final decree of divorce. Frank H. Dunne, Judge. Petition denied.

The facts are stated in the opinion of the court.

W. Lindley Abbott for Petitioners.

Hettman & Hoge, Frank Hall and H. S. Whitthorne for Respondents.

STURTEVANT J.—This is an application for a writ of *mandamus* directing the trial court to enter a final decree of divorce. An understanding of the application requires a consideration of the following facts:

Prior to June 7, 1919, George Edward Bennett and Susie H. Bennett were husband and wife. On that day the wife commenced an action for divorce. The petition does not set forth the issues made by the pleadings, but on June 1, 1920, the trial court entered a decree of divorce. Nothing to the contrary appearing, we must presume that the issues disposed of in that decree were properly before the court. So assuming, it appears that there were presented to the trial court issues involving all of the property rights of the parties and that the trial court disposed of the same.

Paragraphs II to VI are as follows:

"II. And it is further ordered, adjudged and decreed that said plaintiff be and she is hereby further awarded the sum of Two Hundred and Twenty-five ($225.00) Dollars per month for the care, support and maintenance of herself and said minor child, which said sum said defendant is hereby ordered and directed to pay to said plaintiff monthly on the first day of each and every month following the entry of this decree and until the further order of this Court;

"III. And it is further ordered, adjudged and decreed that said defendant be and he is hereby enjoined, restrained and prohibited, until the further order of this court, from conveying, transferring or otherwise disposing of or putting out of his possession or from creating any lien upon any

and all of the community property of plaintiff and defendant which is hereinafter particularly described;

"IV.   And it is further ordered, adjudged and decreed that a lien is hereby created upon that certain real property in Ross Valley, County of Marin, State of California, which was formerly occupied by plaintiff and defendant as their home, in favor of plaintiff and against said property, as security for the payment to plaintiff of the sums of money hereinabove set forth at the times and in the manner herein prescribed, and that upon the death of defendant, said home property, in this paragraph referred to, be and become the separate property of plaintiff;

"V.   It is further ordered, adjudged and decreed that subject to the provisions of this decree the community property of plaintiff and defendant, which is hereinafter described, be and the same is hereby awarded and set apart to the defendant.   Said community property is particularly described as follows:

"A certain improved parcel of real property in the Town of Yolanda, County of Marin, State of California.

"Twenty-eight hundred and eighty-five (2,885) shares of the capital stock of the Pacific Stevedoring and Ballasting Company, a corporation organized under the laws of the State of California.

"Fifteen Hundred (1,500) shares of the capital stock of the Western Equipment Company, a corporation organized under the laws of the state of California.

"VI.   And it is further ordered, adjudged and decreed that that certain real property in Ross Valley, County of Marin, State of California, formerly occupied by plaintiff and defendant as their home, be and the same is hereby awarded to defendant for the term of his natural life, with remainder after his death to the plaintiff, subject, however, to the lien hereinabove created in favor of plaintiff as security for the payment of the sums in this decree particularly provided for; and that upon the death of said defendant that said real property in this paragraph specified become the absolute property of plaintiff."

That interlocutory decree has not been vacated, annulled, or set aside and no final decree of divorce has ever been entered in said action.

On November 12, 1923, the husband died and thereafter the petitioners offered his will for probate and the will was admitted to probate and petitioners were appointed executors thereof. Later they appeared in the divorce action and made a motion that a final decree be entered. The motion was denied and the petitioners then applied to this court for a writ of mandate to compel the entry of a final decree. [1] That writ should not issue except "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office," etc. (Code Civ. Proc., sec. 1085.) [2] The statute does not "specially enjoin" a trial court to grant a motion to enter a final decree in a divorce action when the motion is made by the executor of the will of a deceased spouse. (Civ. Code, sec. 132.) [3] Nor will the writ issue when the petitioners have a plain, speedy, and adequate remedy at law. (Code Civ. Proc., sec. 1086.) These petitioners have such a remedy. [4] In this state the parties may wholly omit, or in part omit, to cause their property rights to be adjudged in the interlocutory decree, or they can cause such rights to be adjudged in such interlocutory decree. (*Brown* v. *Brown*, 170 Cal. 1, 3, 4 [147 Pac. 1168].)

[5] As to all matters contained in the interlocutory decree every attack can be made that can be made on a final decree in any other kind of a suit. (Civ. Code, sec. 131.) But each and every such attack must be made within the time prescribed by the statute. (*Suttman* v. *Superior Court*, 174 Cal. 243 [162 Pac. 1032].) [6] Nevertheless, as a decree adjudging the status of the parties, the interlocutory decree is not operative because the statute is so written. (Civ. Code, sec. 132; *Estate of Dargie,* 162 Cal. 51, 53 [121 Pac. 320]). [7] But when each and every period has expired within which an attack could have been made by motion or by appeal, then and in that event the so-called interlocutory decree, in so far as it adjudges the property rights of the parties, becomes a conclusive decree. (*Claudius* v. *Melvin,* 146 Cal. 257 [79 Pac. 897] ; *Reed* v. *Reed,* 9 Cal. App. 748, 754 [100 Pac. 897] ; *Huneke* v. *Huneke,* 12 Cal. App. 199 [107 Pac. 131].) In the latter case, at page 203, the court said: "The primary contention of appellant is that, under the statutes of this state, the court had no jurisdiction to enter a judgment establishing the rights of the

parties to the property involved until the expiration of one year from the date of the interlocutory judgment decreeing the divorce, or until such time as the entry of a final judgment came on to be heard. This contention has been met and determined adversely to appellant by this court in *John* v. *Superior Court,* 5 Cal. App. 264 [90 Pac. 53], and subsequently by the Supreme Court in *Pereira* v. *Pereira,* 156 Cal. 1 [103 Pac. 488], in both of which cases it is determined that, in the absence of an order continuing the hearing as to the property rights involved, the opportune time for hearing and final determination of the rights of the parties as to the property is at the time and place of the trial of the principal issue involved in the divorce. . . . In so far, then, as the action involving the conflicting claims to real property is concerned, the judgment of the court thereon became final as to all parties six months after the entry thereof, in the absence of an appeal." As to the status of the parties there is another paper that determines that question and that paper is what is designated by the divorce statute "the final judgment." [8] The paper last mentioned may be entered on the motion of either spouse or by the court of its own motion. The statute is so written. (Civ. Code, sec. 132.) But no authority is given by the statute to any other person to make the motion. All of these views are re-enforced by the history of sections 131 and 132 of the Civil Code. The evil which those sections sought to eliminate was the ever-increasing number of divorces—the subject of property rights had never given trouble, nor was there ever abroad in the land any thought that property divisions between husband and wife, or between others, constituted a social menace.

*Remley* v. *Remley,* 49 Cal. App. 489 [193 Pac. 604], is not opposed to anything said above. That case involved an appeal from an interlocutory decree and the question decided was what language should have been used therein. *Radich* v. *Radich,* 64 Cal. App. 605 [222 Pac. 182], was an appeal from an interlocutory decree and was likewise determined on the language used. It was held the language was but an expression as to what disposition would be made in the final decree. *Strupelle* v. *Strupelle,* 59 Cal. App. 526 [211 Pac. 248], was closely parallel to the Remley case. Moreover, no one of the last three cases was ever considered or

approved by the supreme court. But in the instant case there was no appeal from the interlocutory decree and it has become conclusive on the parties at this time.

[9] When the interlocutory decree is silent as to property rights and deals solely with the status of the parties, and when no final decree is entered before the death of one of the spouses, the interlocutory decree becomes *functus officio.* (*Gloyd* v. *Superior Court,* 44 Cal. App. 39 [185 Pac. 995].) When the interlocutory decree deals with the status of the parties and also with the property rights of the parties, the case is quite different and the interlocutory decree, if not vacated in the mode prescribed by law, becomes a conclusive decree as to their property rights. (*Gould* v. *Superior Court,* 47 Cal. App. 197 [191 Pac. 56].) That case involved an interlocutory decree adjudging and determining the property rights of the parties and the decree adopted, in that behalf, the provisions of a contract which the parties had executed. [10] It remains, then, to ascertain and decide the effect of such a decree when the record does not show that the judgment was made up by adopting as a part thereof the contract theretofore made and entered into by the parties. We think it has the same standing. The judgment alone is a contract. (*Weaver* v. *San Francisco,* 146 Cal. 728, 732 [81 Pac. 119].) The difference between the two cases, in common language, is that in the case as last stated the contract is in the form of a judgment and in the Gould case the contract is (1) in the form of a judgment and (2) in the form of an obligation signed by the parties.

We reach this conclusion with less reluctance when we consider the practice that has obtained in this state. Since 1903 we have had the law authorizing interlocutory decrees. During all of the intervening years the general practice was to draw an interlocutory decree, in all respects (except as to the status of the parties) as we formerly drew a final decree. During that same period it was the general practice to use printed blanks for framing final decrees, and such final decrees were silent as to all subjects concerning property rights. It is claimed that interlocutory decrees, no matter how worded, should be held as merely interlocutory as to property rights and not conclusive until adopted and

inserted in a final decree. If so, it must follow that, in the vast majority of cases that have heretofore been. decided, the property rights of those litigants have not been disposed of because the final decrees were silent on the subject and that such parties are tenants in common. (*Brown* v. *Brown, supra.*) Every principle involved in the rule of *stare decisis* constrains us not to make such a ruling unless compelled to do so. (*Sacramento Bank* v. *Alcon,* 121 Cal. 379, 382 [53 Pac. 813].) For the reasons hereinabove stated we think the principle applied in the Gould case applies to this case and we are not disposed to depart therefrom.

The rule that the interlocutory decree becomes final after the time to appeal has expired, is general. It is a general rule applicable to interlocutory decrees in divorce actions and to decrees in actions other than divorce actions. Ordinary illustrations are injunction proceedings. In those actions provision is also made for interlocutory decrees after a hearing on the merits and for an appeal from such decree. The legal value of such decrees has been fully inquired into and adjudicated. (23 Cyc. 1233, note 70; *Gallaher* v. *City of Moundsville,* 34 W. Va. 730 [26 Am. St. Rep. 942, 12 S. E. 859]; *Burner* v. *Hevener,* 34 W. Va. 774 [26 Am. St. Rep. 948, 12 S. E. 861]; *City of Detroit* v. *Village etc.,* 186 Mich. 166 [Ann. Cas. 1917E, 297, 152 N. W. 1002, 1004]; *Younkin* v. *Younkin,* 44 Neb. 729 [63 N. W. 31, 32]; *Bangs* v. *Strong,* 4 N. Y. 315, 317.)

In the case of *Gallaher* v. *City of Moundsville, supra,* the plaintiffs commenced an action and took out an injunction to restrain the issuance and sale of certain bonds. Thereafter, on the second day of May, 1890, the injunction was dissolved but the bill was not dismissed. There was no appeal from the order of dissolution and the same stands in full force. Thereafter the same plaintiff, suing in behalf of himself and other taxpayers and owners of property in the city, commenced an action to restrain the collection of taxes to pay the interest on the bonds and took out a temporary injunction. The defendants moved to dissolve the injunction and pleaded as *res judicata* the order first mentioned. The trial court denied the motion to dissolve and the defendants appealed. The court made an exhaustive study of the facts and the principles applicable as presented by the

record, and held that the plea of *res judicata* was well founded. Among other things the court said: "The same facts were stated in both bills. There was no issue on them. It was a decision on the law of the case on demurrer and motion to dissolve. The pith and point of the litigation was inevitably decided, for without it the order of dissolution could not have been made. The same facts sustained the claim in both bills." To the same effect are: *McCourtney* v. *Fortune*, 42 Cal. 387, 390; *Regan* v. *McMahon*, 43 Cal. 625, 627; *Barry* v. *Barry*, 56 Cal. 10, 11; *Sharon* v. *Sharon*, 67 Cal. 185, 199 [7 Pac. 456, 635, 8 Pac. 709]; *Gutierrez* v. *Hebbard*, 106 Cal. 167–169 [39 Pac. 529, 535]; *Holt* v. *Holt*, 131 Cal. 610, 611, 612 [63 Pac. 912]; *Devoe* v. *Superior Court*, 140 Cal. 476, 486 [98 Am. St. Rep. 73, 74 Pac. 28]; *Bohn* v. *Bohn*, 164 Cal. 532, 539 [129 Pac. 981].

In view of what has been said above, the effect of the prayer of the petition before us is that the trial court be directed to enter a final decree adopting the interlocutory decree which has already become conclusive. To do so is to aid nobody and to injure nobody. By appropriate proceedings in the probate court the rights of the petitioners can be fully protected as to the properties belonging to the estate of the deceased husband, and if any erroneous rulings are made the same can be corrected on appeal; but it will benefit no one for this court to perform the idle act of causing one conclusive decree to be merged in another conclusive decree.

The petition is denied.

Nourse, J., and Langdon, P. J., concurred.