[Civ. No. 4037. Third Appellate District.—May 3, 1930.]

In the Matter of the Estate of W. H. CASWELL, Deceased. GWENDOLYN CASWELL, Appellant, v. E. W. CASWELL, Respondent.

Ralph H. Lewis and George E. McCutchen for Appellant.

Bradford, Cross & Prior and J. Raleigh Kelly for Respondent.

JAMISON, J., *pro tem.* — This appeal is from certain portions of the decree of distribution rendered by the court in the Estate of W. H. Caswell, Deceased, wherein certain of the assets of said estate were held to be the separate property of decedent.

By said decree one-half of the assets so decreed to be separate property of deceased was ordered distributed to respondent and Maud Caswell, brother and sister of deceased, and the other half to appellant, the surviving wife of deceased. Appellant, who is the administratrix of said estate and who petitioned the court to order the distribution of the assets of said estate, contends that all of the assets of said estate are community property and that as the surviving wife of deceased she is entitled to have the whole thereof distributed to her.

It appears from the evidence that appellant and deceased were married on February 11, 1911, and that his death occurred on December 1, 1926. At the date of said marriage deceased owned an inchoate right to a half interest in a certain billboard advertising business known as the Caswell Company, which interest arose in the following manner:

On March 1, 1907, W. A. Caswell, the father of deceased and respondent, who was then the owner of a billboard advertising business known as the Caswell Company, entered into an agreement with them by the terms of which it was agreed that he leased said business, together with its equipment, to them for a rental of $15,000, same to be paid in installments of $100 per month, they to become the owners thereof when the full sum of $15,000 was paid to him. At the date of the marriage of appellant and deceased there had been paid on the said agreement the sum of $4,600.

W. A. Caswell died April 28, 1914, and by his will he bequeathed to his said sons the unpaid portion of the said $15,000, namely, the sum of $6,600, they having paid on said

agreement from the date of said marriage up to the death of said W. A. Caswell the sum of $3,800.

On March 30, 1915, respondent leased to deceased his half interest in said business for a period of five years from that date at a monthly rental of $200 per month, and on April 1, 1920, respondent executed a new lease to deceased for another period of five years with the privilege therein given to deceased to purchase, during said five years, respondent's half interest in said business at a price of from $20,000 to $25,000, depending, for the amount to be paid, on the year in which the option was exercised. In 1921 deceased exercised the option for a purchase price of $22,000, having in the said year 1921 sold the said business and equipment to Foster & Kleiser for the sum of $100,000, $25,000 of which was paid in cash, a note was executed for $15,000 and for the remaining $60,000, 600 shares of the capital stock of the said Foster & Kleiser Company, of the par value of $60,000, were delivered to deceased.

The court found that these 600 shares of the capital stock of the said Foster & Kleiser Company were the separate property of deceased.

At the date of his death deceased had title to certain lots or parcels of real estate. One of the lots or parcels was deeded to respondent and deceased in 1909. The purchase price of this parcel is not stated. A mortgage for $700 was placed upon this parcel in the deal, but just when this mortgage was paid is not stated; however, respondent deeded his half interest in said parcel to deceased in the year 1916. The title to all the other lots or parcels was acquired after the said marriage and payment for same was made from the profits arising from the said business.

The court found that all of the lots or parcels of land owned by deceased at the time of his death was his separate property except one parcel, presumably the home of appellant and deceased.

Appellant contends that all of these lots and parcels of land are community property. Appellant testified that at the date of her marriage she had in cash the sum of $3,750, which she turned over to deceased immediately after the said marriage. She further testified that at this time deceased was needing money for his business; that he was running on a shoestring; that he had very little money and

was forced to pay the bills of the company weekly; that she turned the money over to him to be used in said business and that she did this upon the understanding that it was to be used in the business and that it would give her an interest therein. A witness produced by appellant, a Mrs. Garliepp, testified that she was employed by the Caswell Company in March, 1911, and continued in that employment until 1915; that for the first year and three or four months she was deceased's secretary and after that both secretary and bookkeeper until 1915; that in June, 1912, she had a conversation with deceased in which he told her that appellant had an interest in the said business; that she had put some three or four thousand dollars in it.

Respondent testified that he and deceased took over the business of the Caswell Company in 1907; that thereafter he and deceased conducted the said business until 1912, deceased having charge of the office and respondent having charge of the outside work; that on March 12, 1912, they entered into an agreement which was to continue in force for one year from that date, by the terms of which deceased was to have the sole charge of said business at a salary of $250 per month; that at the end of said year respondent returned and again took charge of the outside work until the execution of the lease in 1915. He testified that deceased never mentioned to him that appellant had ever turned any money over to him; that deceased never put any outside money in the business; that had deceased put any outside money in the business respondent would have known it.

The trial court found that at the time of the marriage of appellant and deceased, appellant had as her sole and separate property the sum of $3,750 in cash, which she delivered to deceased and that at that time deceased said: "This is for both of us; it goes into one pot for both of us; it is jointly for both of us." The court further found that no community property, nor any community earnings, went into the business of Caswell Company, or in any of the property found to be the separate property of deceased. And in its conclusions of law it found that the separate estate should be charged with the $3,750 which it found to be community property.

Section 163 of the Civil Code provides that "All property owned by the husband before marriage, and that acquired

afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property.'' Section 164 of said code provides that all other property acquired after marriage, including real and personal property situated within the state, is community property.

All of the real estate, except the half interest in the parcel deeded to deceased and respondent in 1909, was acquired after the marriage. The half interest in the business of the Caswell Company was not owned by deceased at the date of said marriage. He had at that date an executory right only to become such owner, though it may be said that he did have an interest in the said business at the date of said marriage to the extent that he had paid his part of the installments under the agreement with his father, that is to say, to the extent of $2,300. From the date of his marriage to the death of his father on April 28, 1914, he had paid the further sum of $1900 upon the said agreement and upon the death of his father, by bequest under his father's will he became a half owner in the said business, the said bequest amounting to the sum of $3,300. It, therefore, appears that at the time deceased became the owner of the half interest in the said business he had paid thereon up to the time of his marriage the sum of $2,300; $1900 was paid thereon after his marriage, and the payment of his portion of the said $15,000 was completed by the bequest of the $3,300 willed to him by his father. There is no positive evidence as to the source from which the $1900, paid on the said agreement after the marriage, was derived, though it must have come either from the money appellant turned over to deceased, or from the deceased's earnings from the said business, for the evidence clearly shows that when the sons entered into the agreement with the father neither of them had any means, and this condition continued for several years thereafter. Relative thereto respondent testified as follows: ''Well, when we first took the business over my father gave us, under the agreement there, my father gave us the same amount . . . We didn't have to pay anything because he knew we didn't have no money; then we started in drawing just what we had to draw. . . . It was twenty-five dollars a week apiece we drawed, that went on for a year or two years, then we drawed thirty-five dollars a week, then he brought it up to fifty later on as the business increased.'' He further

stated that by 1912 they were each drawing fifty dollars per week, that they had no difficulty in meeting the payments to their father because they did not go ahead with improvements only when they had money to spare.

It is evident from this testimony of respondent and from the testimony of appellant that at the date of said marriage deceased, outside of his interest in the said business to the extent of the installments he had paid, had little, if any, means of his own. It is also evident whether the said $1900 was paid from the earnings of said business or from the money turned over to deceased by appellant it was community property.

█ Where a husband or wife owns a business before marriage and continues to conduct it thereafter, the portion thereof attributable to the personal activity, ability and capacity of the person conducting the business will be regarded as community property. (5 Cal. Jur. 299; *Pereira* v. *Pereira*, 156 Cal. 1 [134 Am. St. Rep. 117, 23 L. R. A. (N. S.) 880, 103 Pac. 488].) Earnings acquired by the industry and skill of either husband or wife are to be credited to the community. (*Estate of Pepper*, 158 Cal. 619 [31 L. R. A. (N. S.) 1092, 112 Pac. 62].)

No evidence was produced indicating in any way that this $1900 was acquired from any other source than from the community property. █ The presumption is that all property acquired by either spouse after marriage, otherwise than by gift, bequest, devise or descent, is community property. (5 Cal. Jur. 311.) And while this presumption is not conclusive, the burden rests upon the party affirming the fact to the contrary, and such fact must be established by clear and convincing evidence. (*Dimmick* v. *Dimmick*, 95 Cal. 323 [30 Pac. 547]; *Morgan* v. *Lones*, 78 Cal. 58 [20 Pac. 248].)

█ There is substantial evidence that the money turned over to deceased by appellant went into his said business, while upon the other hand the evidence produced by respondent to the contrary is far from being so. The only evidence offered by respondent that this money did not go into deceased's said business is his own testimony to the effect he did not see it set forth or mentioned in the books of the company; that deceased never told him about having received it and his conclusion from this that he would have

known about it had it occurred. It is evident that the money was not turned over to deceased for the purpose of acquiring an interest in respondent's half of said property, but only an interest in deceased's half thereof. The separate property of deceased that went to the purchase of the half interest in the said business was the sum of $2,300 paid by him before marriage and the $3,300 willed to him by his father, making a total of $5,600. The $3,750 turned over to deceased by appellant undoubtedly went into and was used in deceased's half interest in the said business. We think that the language used by the appellate court in the case of *Vieux* v. *Vieux*, 80 Cal. App. 222 [251 Pac. 640, 643], can be very appropriately applied to the facts of this case. Therein the court said: "In the instant case, the husband having acquired an inchoate right, on compliance with certain conditions, to become an absolute owner of the property in question, and the facts showing that the required conditions were met with funds furnished by the community, aided by other funds issuing directly from the property agreed to be purchased, justice demands that the rights of the parties should be measured by the direct contributions made by the respective parties to the purchase price of the property."

In the purchase of the said business deceased made direct contribution on the purchase price thereof in the sum of $5,600, while appellant made direct contribution on the purchase price in the sum of $3,750; therefore, the interest of each in the said business should be measured by the contribution made by each.

We are of the opinion that, except the half interest in the tract of land purchased from Nellie Reed and husband before the marriage, being the north half of the south half of lot 1 and the north half of the south half of lot 2 and the west 70 feet of lot 2 in the block bounded by R and S and Sixth and Seventh Streets in the city of Sacramento, which the court found to be the separate property of deceased, and except the west half of lot 2 in the block bounded by and between P and Q and Tenth and Eleventh Streets in said city, found by the court to be community property, all of the other parcels or lots of land owned by deceased at the time of his death, and the 600 shares of the capital stock of the Foster & Kleiser Company were separate property to

the extent of 112/187 thereof, and was community property to the extent of 75/187 thereof.

■ We are also of the opinion that the promissory note of C. R. Ray for $1820, the five shares of the Sacramento Hotel Company and the 100 shares of the Sacramento Riverside Bath and Power Company, which the trial court found to be separate property of deceased, is community property, for the reason that there is nothing in the record showing or tending to show when or how this last-mentioned three pieces of property were acquired nor any evidence that any of them was separate property of deceased. ■ In passing upon this question in the *Estate of Jolly*, 196 Cal. 547 [238 Pac. 353, 356], the court said: "The property in the possession of one of the spouses at the close of a long marital relation must be presumed to be community unless a better right can be established by the spouse claiming it to be his or her separate property."

And unless this presumption is controverted the court or jury is bound to find according to the presumption. (*Stafford* v. *Martinoni*, 192 Cal. 724 [222 Pac. 919].)

■ Respondent produced in evidence a deed executed by appellant to deceased dated October 24, 1918, for the undivided one-half interest in two of the said tracts of land and also produced in evidence a bill of sale dated August 23, 1921 (erroneously marked 1911 in the copy of said bill of sale set forth in the transcript as exhibit "P"), by which appellant conveyed to deceased all her right, title and interest in the business of the Caswell Company. Appellant testified relative to the circumstances under which she signed the said deed and bill of sale that deceased would come home and present a paper to her and tell her to sign it, and when she would ask him what it was he would say for her to never mind, but to sign it. That trusting him implicitly, she sometimes did not even look at the paper to see what it was, but at once signed it; that no consideration of any kind or character passed from deceased to her for either of these two conveyances.

Respondent offered no evidence tending to show that appellant received any consideration for these two conveyances, or for either of them, nor to controvert the testimony of appellant as to the circumstances under which she signed them. ■ Inasmuch as in his brief respondent makes no

mention of either of these conveyances, presumably he does not rely upon them.

■ Confidential relations are presumed to exist between husband and wife, and, in his dealings with his wife, the husband, if he obtains any advantage over her, must stand unimpeached of any abuse of the confidence presumptively reposed in him by his wife and resulting from the marital relation, and failing in this he must bear the burden of showing that the transaction was fair and just and fully understood by the party from whom the advantage was obtained. (*Estate of Cover,* 188 Cal. 133 [204 Pac. 583]; *Locke Paddon* v. *Locke Paddon,* 194 Cal. 73 [227 Pac. 715].)

Under these circumstances neither the said deed nor the said bill of sale was effective to convey to deceased appellant's interest in the property mentioned therein.

The decree is reversed and the trial court is directed to enter a decree in accordance with this opinion.

Thompson (R. L.), J., and Finch, P. J., concurred.