## GUMP et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9825.

Circuit Court of Appeals, Ninth Circuit.
Dec. 31, 1941.
Rehearing Denied Feb. 3, 1942.

Charles A. Christin and Walter Christie, both of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Joseph A. Jones, Sp. Assts. to the Atty. Gen., for respondent.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a proceeding to review a decision of the Board of Tax Appeals. It involves estate taxes assessed against the estate of Alfred S. Gump, of which petitioners are the executors.

Alfred S. Gump died testate January 23, 1934. In 1905 he had married petitioner Camille R. Gump. At that time he owned 25 shares of the capital stock of the S. & G. Gump Company, a San Francisco concern which had been organized about six years previously. During the period from 1905 to February 9, 1929, the decedent and his two brothers, Abraham L. and William E. Gump, devoted their entire time and efforts to the developing and building up of the business of the Gump Company, and the success of the concern was largely due, and in equal measure, to the ability and energy of the three brothers. From March, 1921, to February, 1929, the decedent held 2,664 shares of common stock of the Gump Company, all of which were concededly community property. In the latter year his wife owned 46 shares.

On February 9 and December 23, 1929, decedent and his wife entered into agreements under the terms of which they sold their shares to Abraham L. Gump for the book value thereof—$1,100,976.25—together with 15 shares of the capital stock of an affiliated realty company. Of the purchase price $500,000 was payable in cash, the down payment including the sum $84,018.20 representative of the entire agreed price of the realty company shares. The remainder was payable in seven annual in-

stallments evidenced by as many promissory notes, the last of which matured February 1, 1936. All notes were made payable to decedent. The agreements recited that the decedent was the owner of 2,664 shares of the Gump Company and the 15 shares of the realty company, and that his wife was the owner of 46 shares of the Gump Company. At death four of these notes remained unpaid in the principal amount of $384,994.45.

In auditing the estate tax return of Gump's executors the Commissioner determined that the gross estate of the decedent consisted of the entire community estate. He included therein the four unpaid notes at their face value.

The executors filed an income tax return for the decedent covering the period from January 1, 1934, to the date of his death—January 23. Not desiring to include in that return the gain realized by the transmission of the unpaid installment obligations of Abraham L. Gump by reason of the death of the decedent, as provided for in § 44(d) of the Revenue Act of 1934,[1] the executors furnished a bond conditioned upon the ultimate return as income of these installment obligations. The Commissioner determined that 74.045% of each dollar collected on such installment obligations represented taxable income, that is, realized gain, to be accounted for when collected. He further determined that the estate or the beneficiaries should return as taxable income the amount of such gain paid by Abraham L. Gump subsequent to January 23, 1934. It may be added here that the amount of federal income tax payable on the income of decedent for the period of January 1 to January 23, 1934, would have been greater by $25,877.59 had there been reported as taxable income for that period the amount of gain included in the principal of the unpaid installment obligations in question.

On the showing before it the Board of Tax Appeals concluded that the entire estate was community property acquired prior to July 29, 1927, in which the rights of the wife were so restricted as to subject the whole of the community estate to the federal estate tax. Further, that the full value, as of the date of death, of the unpaid installment notes represented capital or corpus includible in the gross estate.

■ 1. Petitioners contend that, by virtue of the contract disposing of the Gump Company stock, the restricted community estate theretofore existing was transmuted into a tenancy in common in the proceeds of the sale. The point merits little attention. The agreement specifically recites that the husband is the owner of 2,664 shares and that the wife owns 46 shares. The purchaser undertook to pay to the husband the agreed price of the whole number of shares. The extent of the wife's interest is limited to so much of the sale price as was applicable to her individual shares, and to this extent it is to be supposed that her husband was accountable to her.[2] There is nothing in the instruments suggestive of an intent to convert the community estate in the stock into a tenancy in common in the proceeds. Doubtless the husband and wife joined in the agreement as a matter of convenience, since each held shares and all were being sold. Perhaps, as the Commissioner suggests, there may have been the further purpose to join the two in a single instrument to avoid possible controversy. See Riley v. Gordon, 137 Cal.App. 311, 30 P.2d 617.

For authority petitioners rely on Oakland Bank, Executor, v. Commissioner, 23 B.T.A. 256. That case deals, not with the sale of property, but with its acquisition through the medium of a deed in which the husband and wife were named as grantees. The situations are clearly distinguishable. Moreover, in the proceedings for the probate of Mr. Gump's will the California court determined that the whole of the estate was community property.

■ 2. It was stipulated that at December 31, 1928 (the date as of which the contract of sale became effective) the earned surplus of the Gump Company at-

---

[1] Following is the provision of § 44(d) relating to the situation:

"This subsection shall not apply to the transmission at death of installment obligations if there is filed with the Commissioner, at such time as he may by regulation prescribe, a bond in such amount and with such sureties as he may deem necessary, conditioned upon the return as income, by the person receiving any payment on such obligations, of the same proportion of such payment as would be returnable as income by the decedent if he had lived and had received such payment." 26 U.S.C.A. Int.Rev.Code, § 44 (d).

[2] The proceeds of the sale of the wife's shares are not involved in the controversy.

tributable to the 2,664 shares held by Alfred S. Gump had increased by the amount of $193,028.44 over the earned surplus attributable to such shares at July 29, 1927. In other words, there was an increase in the book value of the Alfred S. Gump shares by that amount.

Petitioners contend that a definite part of this increment must be excluded from the gross estate of the husband. The reasoning is predicated on the amendment of July 29, 1927, to the community property law of California, after which date the wife's interest ceased to be a mere expectancy and became a "present, existing and equal" interest. Section 161a Civil Code of California. Concretely, on the authority of Pereira v. Pereira, 156 Cal. 1, 103 P. 488, 23 L.R.A.,N.S., 880, 134 Am.St.Rep. 107, and kindred cases,[3] it is argued that the increment of invested capital, over and above a fair return on the investment, is attributable to the personal efforts of the husband, hence belongs to the community estate in which the wife had at the time a present interest.

The question is primarily one of fact, and the record before the Board permitted of the drawing of diverse inferences. By 1927 the Gump Company was beyond the pioneer stage; it had long since "arrived", and Gump's stock had already a book value little short of a million dollars. The years 1927 and 1928 were boom years. In the absence of a clear showing to the contrary, it is inferable that such increment in book value as then took place was largely a normal enhancement of capital investment in a stable and prosperous business. Mr. Gump was at the time over 60 years of age and currently received for his services a salary of $20,000 a year. That his continued participation and the exercise of his talents were not believed essential to the success of the establishment is suggested by the fact that his interest was shortly to be acquired by one of his brothers. The Board was entitled to infer that the salary fully compensated the community for the husband's personal efforts, particularly at that stage in the development of the business. Van Camp v. Van Camp, 53 Cal.App. 17, 199 P. 885; Shea v. Commissioner, 9 Cir., 81 F.2d 937.

3. Petitioners claim that the cost basis of the installment notes should have been adopted as the criterion of value for estate tax purposes, rather than the fair market value as of the date of death. The argument is that any amount in excess of the cost basis, as used for arriving at the margin of profit subject to income tax, represented "unrealized" gain, hence could not be considered as an asset of the estate.[4]

The argument is specious. In the year the sale was made Gump realized a taxable profit to the extent of the difference between the cost basis of the stock and the amount for which he sold it. The latter amount was made up of the cash received plus the then value of the promissory notes. This profit, being property of the decedent in his lifetime, was no less an asset of his estate when he died. Had Gump retained the stock instead of selling it, nobody could question that for estate tax purposes it would be valued at its market value at death rather than at its cost basis to the decedent. The whole gain was taxable as income, although by reason of the installment provisions of § 44 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 364, the taxpayer was given the option to defer payment until the installments were collected. Nuckolls v. United States, 10 Cir., 76 F.2d 357; Crane v. Helvering, 2 Cir., 76 F.2d 99.

Admittedly the installment notes were worth their face value at the time of death. A mere glance at the pertinent statute and regulations shows that they were taxable at their fair market value as of that date. Section 302 of the 1926 Act, as amended by § 404 of the 1934 Act, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Code, § 811, provides that "the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *." The applicable regulation (Treasury Regulations 80, 1934 Ed., art. 13) states: "The value of all property includible in the gross estate is the fair market value thereof at the time of decedent's death." And subsection (5) of that article is to the effect that "the value

---

[3] In re Estate of Gold, 170 Cal. 621, 151 P. 12; In re Estate of Caswell, 105 Cal.App. 475, 288 P. 102; In re Estate of Fellows, 106 Cal.App. 681, 289 P. 887; In re Estate of McCarthy, 127 Cal.App. 80, 15 P.2d 223.

[4] As already noted, the Commissioner had determined that approximately three-fourths of the sale price of the stock represented taxable gain.

of notes, whether secured or unsecured, will be presumed to be the amount of unpaid principal, plus accrued interest to the date of decedent's death, unless the executor establishes a lower value, or it is shown that they are worthless."

Petitioners say that in any event they should be allowed to offset as against the estate tax the sum of $25,877.59. This, it will be recalled, is the amount of income tax they would have paid had the installments been accrued as of the date of death. No statutory authority is offered in support of such deduction, but it is claimed that the allowance of it is indicated by the decision in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421. However, Bull v. United States affords no recognizable analogy. There the profits subjected both to income and estate taxes were profits earned after the death of the decedent.

Had petitioners here chosen to omit the bond, they could have included, and would have been obliged to include, the theretofore unreported gain in the return of income for the decedent for the taxable period in which his death fell, in which event the corpus of the estate would presumably have been diminished by the amount of the tax. But the sum paid would not have been deductible from the estate tax itself. It may in a sense be true that the same assets are here being taxed as corpus and as income, but the income subjected to tax was income of the decedent, not of his estate. It is elementary that estate taxes and income taxes are totally different in principle and concept. Compare Helvering v. Enright, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093.

Affirmed.