[Civ. No. 12998. First Dist., Div. One. Sept. 18, 1946.]

BARBARA WILSON, Respondent, v. FRANCIS A. WILSON, Appellant.

Arthur B. Dunne, Dunne & Dunne and Young, Hudson & Rabinowitz for Appellant.

Vincent W. Hallinan and James Martin MacInnis for Respondent.

PETERS, P. J.—Defendant appeals from an interlocutory decree of divorce granted to his wife after an extended and bitterly contested trial. So far as pertinent here, the decree awarded the wife an undivided one-half interest in the former residence of the parties, together with the sole right to the use and occupancy of the same, awarded her all the furniture and contents of the home, awarded her certain art objects created by her after marriage, awarded her $500 a month alimony, ordered the husband to discharge all community bills contracted prior to the filing of the complaint in the amount of $4,829, ordered the husband to pay all federal and state income taxes levied against the wife up to January 1, 1945, and granted to the wife's lawyer attorney's fees in the sum of $1,500. Although the defendant has appealed from the entire judgment he makes no attack on those portions granting his wife the right to a divorce or granting her alimony and counsel fees. The main attack is made on the property provisions of the decree, and upon certain other provisions of the decree hereafter mentioned.

The record is a lengthy one. It shows that defendant was an evasive witness. It shows that he failed to make a full and fair disclosure of his assets and income, and that he attempted to conceal information on these subjects. It shows that he was in tax difficulties with the federal government, and that in at least one case he was found to have fraudulently concealed assets. It also shows that although he was a businessman of much experience that he frequently resorted to the answer "I don't remember" concerning facts that must have been known to him. Under the circumstances disclosed by the record the awards of property, alimony and counsel fees were quite fair to defendant. The record would have sustained more liberal allowances in all of these categories.

The parties were married in New York on January 15, 1931. Shortly thereafter they established their domicile in San Francisco, and resided here until they separated on December 28, 1940. They have no children. This action was filed by the wife on January 19, 1942. The complaint charged the husband with extreme cruelty and desertion. Subsequently an amendment was added charging the husband with adultery, but this charge was dismissed by the trial court. The divorce was granted on the grounds of cruelty. The defendant denied the material allegations of the complaint and cross-complained for a divorce on the ground of extreme

cruelty. Although the defendant testified in support of his cross-complaint in an obvious attempt to blacken his wife's reputation, he did not produce a single witness to corroborate his charges. The plaintiff, on the other hand, produced many witnesses to corroborate her charges of cruelty. Inasmuch as defendant does not challenge this portion of the decree, no useful purpose would be served by setting forth in this opinion a summary of the evidence on this issue, much of which is highly degrading to defendant. Suffice it to say that the evidence of plaintiff and of her many witnesses amply supports the findings that defendant was guilty of many acts of extreme cruelty against his wife, and amply supports the conclusion of the trial court that much of defendant's testimony was not entitled to belief.

The trial court found that the residence of the parties in San Francisco was community property and awarded the plaintiff a one-half interest therein, together with the exclusive right of use and occupancy. This, and part of the furniture in the house, which was also awarded the wife, was found to be the only substantial community property of the parties after nearly 10 years of married life. The defendant is admittedly a man of substantial means. Most of his property he acquired by way of gift or inheritance from his parents and by his management of this property thereafter. Prior to his marriage he was a member of a partnership with his brother and others in a company known as Wilson Bros. & Co. Later, but prior to marriage, this partnership was incorporated as a Nevada corporation, defendant and his brother each owning one-half the stock. This company at one time had extensive lumbering and shipping interests but in recent years its assets have consisted almost entirely of stocks and bonds. Defendant spent an appreciable portion of his time attending to the affairs of this company. This company paid yearly substantial dividends to the two brothers. The court found that the total interest of defendant in this company was his separate property. In addition, defendant owned a stock brokerage firm and was a member of the San Francisco Stock Exchange. Defendant testified that in this business he suffered substantial losses. This business, too, was found to be the separate property of the defendant. Defendant testified that his sole community income was $6,000 per year paid to him by the corporation. The plaintiff and the court ex-

perienced great difficulty in getting defendant to disclose the exact assets and income of this company. Defendant was in the habit of keeping large sums of cash on hand in his office safe and of paying practically all of his bills and expenses in cash. He kept few personal records and many of the records he did have he either destroyed or refused to produce. The inference is quite broad that defendant did these things as part of a plan to defeat his various tax liabilities.

The testimony in reference to the residence is not as clear as might be desired, but this condition of the record was caused by defendant's failure to be frank and fair with the trial court. Admittedly the house was purchased in 1938, some seven years after the marriage, and admittedly title was taken and still stands in defendant's name. Admittedly the house cost $20,000. Defendant testified that he paid for the house in cash and that the funds used for the purchase were the accumulations of dividends from property owned by him before marriage. Based on this evidence defendant urges as his principal contention on this appeal that it was error to find that the house was community property. In this connection he argues that since he testified that his sole community income was $6,000 a year, and since his wife testified that she estimated their living expenses at $3,500 to $4,000 per month, obviously the community funds were more than exhausted in paying the living expenses, and therefore the house must have been purchased with his separate funds. ▪ The plaintiff had no information concerning the source of the money used to buy the house because she had no knowledge of the facts. The record shows that defendant kept his wife in complete ignorance of his income and assets, and that she knew nothing of his business affairs. She did testify that immediately after buying the house the defendant told her that it was community property. While it is argued that this testimony cannot be used to establish the nature of the property, citing such cases as *Estate of Granniss,* 142 Cal.1 [75 P. 324] ; *Estate of McCarthy,* 127 Cal.App. 80 [15 P.2d 223], and *Bias* v. *Reed,* 169 Cal. 33 [145 P. 516], there is respectable authority that such declarations are admissible as declarations against interest. (See *Estate of Smead,* 219 Cal. 572 [28 P.2d 348] ; *Estate of Hill,* 167 Cal. 59 [138 P. 690] ; see cases collected 3 Cal.Jur. Supp., § 74, p. 572.) At any rate such statements may be used as evidence of intent to make a gift of a community interest to the wife, or of a contract between the parties to that

effect. (*Estate of Sill,* 121 Cal.App. 202 [9 P.2d 243]; *Estate of Watkins,* 16 Cal.2d 793 [108 P.2d 417, 109 P.2d 1]; *Tomaier* v. *Tomaier,* 23 Cal.2d 754 [146 P.2d 905]; *Huber* v. *Huber,* 27 Cal.2d 784 [167 P.2d 708].)

█ The position of defendant on this issue is unsound. He testified that he got the cash to pay for the house out of the corporation safe located in his brokerage office. In this safe were several compartments. He had the combination of the safe and keys to the compartments. He testified that his salary from the corporation was kept in this safe in a separate envelope and that periodically he transferred the appropriate amount of cash from the compartment of the corporation to this envelope. He also testified that when he needed money in excess of the $6,000 he simply removed it from the corporate funds in cash, substituting his personal I.O.U. for the amount so removed. Defendant was vague as to the amount of money that was kept in the various compartments of this safe. The plaintiff was unable at first to estimate their monthly living costs, but finally did estimate them at $3,500 to $4,000. This was obviously a guess on her part and is not supported by the facts. The defendant, however, was in a much better position to know the exact living costs of the parties because he paid most of the household bills in cash. He testified that his wife's testimony as to their living expenses was ''absolutely false'' (R.T. 515) and that actually it cost them $300 to $800 a month for living expenses. (R.T. 516.) Obviously, if the $300 figure was believed by the trial court there was a substantial part of the $6,000 a year salary that could have been used to buy the house. The trial court was entitled to disbelieve the defendant's testimony as to the source of the funds, but to believe his testimony as to their living costs. It was entitled to disbelieve his testimony in part or *in toto.* Moreover, there is substantial evidence that after marriage plaintiff, who is an artist, sold some of her art creations for substantial sums, and that the money so received was treated as community property. There is, therefore, in the record some evidence, weak though it may be, from which it may reasonably be inferred that community funds were used to buy the house. This testimony, without the necessity of relying on presumptions, supports the challenged finding.

█ In addition the finding is supported by the strong presumption that all property acquired after marriage (ex-

cept that acquired by a married woman, or by a married woman and another, by an instrument in writing) is community property. This presumption is fundamental in the community property system and is an integral part of the community property law not only of this state but of other states and countries where the system is in operation. (See discussion and many cases collected and commented upon 3 Cal.Jur. 10-Yr.Supp. § 61 et seq., p. 553.) ■ Coupled with this presumption is the elementary but fundamental rule that the burden rests upon the person asserting that the property is separate to establish that fact. (*Estate of Tompkins,* 123 Cal.App. 670 [11 P.2d 886]; *Estate of Gartland,* 114 Cal. App. 269 [299 P. 757]; *Estate of Caswell,* 105 Cal.App. 475 [288 P. 102]; *Estate of Duncan,* 9 Cal.2d 207 [70 P.2d 174]; *Rahr Malting Co.* v. *Koch Brewing Co.,* 9 Cal.App.2d 457 [50 P.2d 476]; *Falk* v. *Falk,* 48 Cal.App.2d 762 [120 P.2d 714].)

■ The presumption is, of course, a rebuttable one. But whether the evidence adduced to overcome the presumption is sufficient for the purpose is a question for the trial court.

■ As in other cases of presumptions, the rule is that the presumption may outweigh the evidence adduced against it and that notwithstanding controverting testimony the presumption alone will support a finding in accordance therewith. (See cases collected 3 Cal.Jur. 10-Yr.Supp. § 63, p. 557.)

Counsel for defendant, while giving lip service to these well settled rules, contends that they have no application here for at least two reasons—first, that the evidence controverts the presumption as a matter of law, and, secondly, that the presumption has no place in the present case at all. So far as the first contention is concerned, little need be said. Obviously, whether defendant's evidence rebutted the presumption was a question for the trial court. In view of what has already been said about defendant's testimony, obviously the trial court was justified in disregarding his testimony on this issue and finding in accordance with the presumption.

■ Defendant's second argument is that evidence that the house was bought in 1938 after marriage was not sufficient to raise the presumption—that in addition plaintiff was under a duty to show that the funds used in the purchase were acquired after marriage. In the absence of such evidence, says defendant, there is no evidentiary basis for the presumption. There is no such limitation on the rule—if

there were, there would be but little room for the operation of the presumption. Obviously, if a litigant had to trace the funds used in each purchase to funds acquired after marriage there would be few cases indeed to which the presumption could apply. The true rule is that the burden is on the party asserting the separate character of the property, and that the presumption applies when the one claiming that the property is community offers evidence that that property was acquired after marriage.

 The soundness of the presumption is well illustrated in the present case. The defendant was the one in possession of the true facts relating to his assets and income. He was evasive and tried to conceal the facts relating to these matters. Neither opposing counsel, his own counsel or the court was successful in getting him to make a full and fair disclosure. Under such circumstances it would result in a miscarriage of justice to not indulge in the presumption.

The same reasoning applies to the findings relating to the furniture and furnishings in the house. Admittedly most of the furnishings and furniture were the separate property of the plaintiff, she having owned them prior to the marriage. In addition, after marriage, some further furnishings and furniture were purchased, plaintiff testifying that after-acquired articles were purchased for $5,000, and defendant testifying that he purchased these articles for $10,000 in cash taken from the office safe, and that all the money so used was his separate property. The same evidence and the same presumption discussed in reference to the house applies to these articles. The finding is amply supported.

The next contention of appellant relates to the finding in reference to the community bills. In reference to these bills the court found that upon the date the complaint was filed there were community debts totaling $4,829 and that such community debts should be paid by defendant.

The facts in reference to the bills did not come to light until the last day of the long trial. At that time the trial judge was making an oral announcement of his conclusions. Counsel for plaintiff called the attention of the court to the fact that his client was being harassed by creditors of the community, and that certain utility and repair bills that the court had ordered defendant to pay had not been paid. He also called attention to the fact that his client was being sued for repairs to the house, that defendant had evaded service in

that action, and that there was danger the house might be sold to satisfy a small mechanic's lien. These bills were ordered paid by the defendant and no challenge is made as to that portion of the decree.

Defendant does not contend that he is not liable for the bills incurred by the parties before the date fixed in the findings, nor does he urge that the trial court did not have the power to make an order requiring him to pay such bills. The sole point urged by him as to these bills is that there is no evidence in the record as to the amount of such bills, to whom they are owed, or their nature.

■ It is true that the list of such bills, although discussed in open court, was not formally introduced into evidence, but this failure to introduce such a list does not require a reversal or modification. The defendant can suffer no injury because of this fact. As between the husband and wife the court determined that the wife should be held harmless for such bills not to exceed $4,829. Before the defendant can be held liable on these bills so far as the wife is concerned she must show that the debts were incurred prior to January 19, 1942, and that the total amount does not exceed $4,829. If disputes arise between the parties in the future over whether a particular bill was a community bill, and whether it was incurred prior to the date the action was filed, such disputes may be easily determined by the trial court.

■ Defendant also objects to that portion of the decree relating to income taxes. In this connection the decree provides that defendant shall "pay and discharge all income taxes levied by the government of the United States, or the State of California, against the plaintiff Barbara Wilson, or which constitute a lien upon any property awarded to her hereby, or in which she is granted any right, title, interest or control hereby, up to the 1st day of January, 1945." (C.T. 169.)

The record shows that after the separation of the parties in 1940 and even after the complaint was filed in 1942 the defendant filed joint returns, and that litigation with the federal government is pending over these returns. It also shows that pursuant to stipulation of the parties defendant has paid plaintiff $350 a month alimony pendente lite since January, 1942. It seems to be the contention of the defendant that under appropriate section of the Internal Revenue Code (26 U.S.C.A. § 22(k)), alimony is chargeable to the wife and not

to the husband. It is argued that the decree above quoted, insofar as it affects the alimony pendente lite, varied the terms of the agreement of the parties retroactively without the consent of the parties. It is also argued that until the amount of the taxes are fixed, determined and assessed against the plaintiff she is entitled to no relief. The decree makes no award of any sum to cover the taxes in question—it merely states that defendant shall pay them after they are assessed. The decree was a proper one. Section 22(k) of the code by its clear language merely applies to alimony payments made subsequent to a divorce or separate maintenance decree. It has no application at all to alimony pendente lite. The regulations expressly so provide. (See Regulations 111, p. 80, § 29.22(k)-1.) It is clear that defendant is liable for and should pay the tax on these payments. The record shows the wife had no other income except from the occasional sale of a work of art. These works of art were awarded to her. We find no error in reference to this portion of the decree.

The defendant also objects to finding No. V. That is an omnibus finding to the effect that all of the allegations of plaintiff's first cause of action are true and that none of the allegations of defendant's answer or cross-complaint are true. An examination of the first cause of action shows that it contains certain allegations in reference to the property rights of the parties which are in conflict with the specific findings made on that subject. The specific findings of course control. Counsel for plaintiff at the oral argument stated that he had no objection to the elimination of that finding. Out of an abundance of caution that finding will be stricken.

The last contention of defendant necessary to discuss is that the interlocutory decree erroneously attempts to make a present absolute disposition of the community property, it being contended that under sections 146 and 147 of the Civil Code the power of the court is limited to making the community property division effective upon the entering of the final decree. While the findings and conclusions use language that speak prospectively, the interlocutory decree undoubtedly attempts to make a presently effective division of the community property. It provides that the plaintiff "is hereby awarded, and there is hereby set over, and her title is hereby quieted as against the defendant" (C.T. 167) to the one-half interest in the house, and substantially similar lan-

guage is applied to the furniture and to the awards in favor of defendant.

The adoption in 1903 of the interlocutory decree provisions found in the code, leaving unchanged the sections relating to the power of the court to divide the community property, has led to much confusion and litigation. (See discussion and collection of cases 20 Cal.L.Rev. 294; ann. 76 A.L.R. 284; cases collected 3 Cal.Jur. 10-Yr.Supp. § 154, p. 674.) There can be no doubt at all that the trial court has jurisdiction to make a present disposition of the community property in the interlocutory decree, and that upon that decree becoming final, it measures finally the property rights of the parties. But whether it is error to make such an award is a most confusing question.

The Supreme Court has recently reviewed the authorities on this subject at length in *Leupe* v. *Leupe,* 21 Cal.2d 145 [130 P.2d 697]. There in the interlocutory decree there was made a present disposition of the community property by awarding it to the husband and giving the wife a cash award for her interest secured by a lien on the property. No appeal was taken from the interlocutory and it became final. Thereafter the trial court attempted to modify the lien provisions. It was held that no such power existed. The discussion by the Supreme Court is well worth repeating here. At page 147 it is stated:

"Appellant contends that the court had no jurisdiction to terminate the lien or to change other portions of the interlocutory decree relating to property after it had become final and the time for appeal or for relief under Code of Civil Procedure section 473 had expired. Respondent replies that any disposition of property rights by the interlocutory decree was not effective or conclusive until a final decree of divorce was entered, and contends, therefore, that the trial court retained power to modify its decree. This problem has been before our courts many times since the legislation of 1903 creating the present dual-decree divorce procedure. While the decisions have not been entirely consistent, no decision has been found that can sustain the order removing the lien. With the exception of certain language to the contrary, hereafter noted, the decisions establish that the trial court is without jurisdiction to modify an unqualified disposition of property rights made in an interlocutory decree of divorce except in accordance with the methods applicable to judgments generally, time

for which had expired in this case before respondent's motion was made. Even though a final decree is not entered, the interlocutory decree becomes a conclusive adjudication and is res judicata with respect to all issues determined. [Citing many cases.]

"Language may be found in certain decisions which cannot be reconciled with the foregoing cases. In *Estate of Boeson,* 201 Cal. 36, 40 [255 P. 800], relied upon by respondent, it was said that the entry of an interlocutory decree does not sever the marital relation, and that any disposition of property made thereby becomes effective only upon entry of the final decree, until which time property rights remain as before the interlocutory decree. The court cited *Estate of Dargie,* 162 Cal. 51 [121 P. 320], and *Estate of Seiler,* 164 Cal. 181 [128 P. 334, Ann.Cas. 1914B, 1093], but these support only the reference to severance of marital relations. Further, the language in *Estate of Boeson, supra,* is dictum, for although the appellant therein was said not to be barred by the decree, she was held barred upon other grounds. *Roberts* v. *Wehmeyer,* 191 Cal. 601, 615 [218 P. 22], suggests the law to be that 'community property may be divided only upon a dissolution of the marriage and . . . an interlocutory decree is not such a dissolution.' This statement of the law has not been followed and has also been characterized as dictum. (*Klebora* v. *Klebora, supra,* [118 Cal.App. 613 (5 P.2d 965)] p. 621.) Similarly, in *Radich* v. *Radich,* 64 Cal.App. 605, 607 [222 P. 182], it was said by way of dictum that the court could not dispose of community property or a homestead until the final decree. Insofar as the language of these cases suggests that a court is without jurisdiction to make an unqualified disposition of property in an interlocutory decree of divorce, it is in opposition to the cases previously cited and must be disapproved.

"An immediate disposal of property upon an interlocutory decree of divorce is thus within the jurisdiction of the trial court. It has been held in certain cases that the trial court *should not* assign and dispose of the community or homestead property immediately by an interlocutory decree of divorce, but should wait until such time as the marriage is absolutely dissolved. [Citing several cases.] These cases, however, dealt with direct appeals from interlocutory decrees in which error only was claimed and do not involve questions of jurisdiction

or the effect of such decrees after the time for appeal has passed. Furthermore, it has been said that the court generally should determine the property issues at the same time it determines the issues with respect to the divorce, although the court may specify that its determination should not become effective or final until the entry of the final decree. (*Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880]; *Webster* v. *Webster,* 216 Cal. 485 [14 P.2d 522]; *Lo Vasco* v. *Lo Vasco,* 46 Cal.App.2d 242 [115 P.2d 562].) This practical solution of the problem was recognized and approved in the Remley and Strupelle cases, *supra.* We need not decide in this case whether it was error to make an immediate assignment of property in the interlocutory decree or whether the right to so dispose of the property of the parties was within the discretion of the court. The time for appeal having elapsed, the determination of property issues in the interlocutory decree became final and was no longer subject to modification except in accordance with the methods applicable to judgments generally. It follows that the court could not alter the decree by terminating the lien in the present case.''

In the present case we are faced with the problem expressly left open in the Leupe case. Here the appeal is from the interlocutory decree. In *Remley* v. *Remley,* 49 Cal.App. 489 [193 P. 604], and *Strupelle* v. *Strupelle,* 59 Cal.App. 526 [211 P. 248], and by implication in other cases (see *Peis* v. *Mohr,* 126 Cal.App. 300 [14 P.2d 878]; *Abbott* v. *Superior Court,* 69 Cal.App. 660 [232 P. 154]; *Webster* v. *Webster,* 216 Cal. 485 [14 P.2d 522]) it has been held to be error to make a present and absolute disposition in the interlocutory. It would appear that a proper solution of this problem would be to hold that the interlocutory may make a present disposition of the community property, but that the title thus conveyed is limited and conditional until the entry of the final decree. A reconciliation before that time or the death of one of the parties, and perhaps other circumstances, would prevent the conditional title from becoming absolute. However, in view of the confusion in the cases it would appear that the Supreme Court or the Legislature are the only bodies that can finally settle this troublesome problem. In the present case it was, of course, proper for the trial court to determine in its interlocutory the status of the property and how it ought to be assigned upon the entering of the final decree. Justice

will best be served by striking from the decree all words presently disposing of the community property and inserting words to the effect that in the final decree the parties are entitled to have assigned to the parties specified the portions of the community property enumerated in the decree. (*Prout* v. *Prout,* 73 Cal.App.2d 715 [167 P.2d 1].) The plaintiff's right of occupancy pending this appeal is not challenged and is not affected by this modification.

For the foregoing reasons finding No. V is stricken from the findings; the interlocutory decree is modified by striking therefrom all words presently disposing of the community property and inserting words to the effect that upon the entering of the final decree the parties are entitled to have assigned to them the portions of the community property mentioned in the decree. As so modified the judgment is affirmed as of the date of its entry; plaintiff to recover her costs on this appeal.

Ward, J., and Schottky, J. pro tem., concurred.