[Civ. No. 2766.   Fourth Dist.   July 28, 1941.]

FRANCESCA LO VASCO, Respondent, v. CARMELO LO VASCO, Appellant.

Canepa & Castruccio and Horace W. Danforth for Appellant.

A. P. Coviello for Respondent.

BARNARD, P. J.—This is an appeal from an interlocutory judgment of divorce.

The complaint alleged a cause of action based upon extreme cruelty, including a specific reference to a number of particulars and circumstances. It was also alleged that certain property, consisting of a home, household furniture, some barber shop equipment and a balance due on a promissory note, was community property. The defendant's answer denied that there was any community property belonging to the parties and alleged that all of the property mentioned in the complaint was his separate property. He also filed a cross-complaint seeking a divorce on the ground of cruelty.

The court found in favor of the plaintiff, finding, among other things, that all of the property mentioned in the complaint was community property; that an undivided one-half interest in the home and in the household furniture should be awarded to each of the parties; that the balance due on the promissory note amounting to $425.56 should be awarded to the plaintiff; and that the barber shop equipment should be awarded to the defendant. An interlocutory decree was accordingly entered and the defendant has appealed.

The appellant first contends that the court's findings with respect to the allegations of cruelty are not sustained by the evidence and that it follows that the decree is without lawful support. Some half dozen specific acts of cruelty are found by the court to have been committed by the appellant, any one of which would be sufficient to support the judgment. It would serve no useful purpose to set forth the evidence in this connection, which takes up nearly 100 pages of the transcript and to a review of which the appellant devotes some 40 pages of his opening brief. The effect of the argument now made is that other portions of the evidence were more worthy of belief than those accepted by the trial court and that other inferences should have been drawn from certain of the evidence. While the evidence is conflicting, there is no possible question that the material findings in this regard are supported by the evidence and the familiar rule applies.

■ It is further argued that the court erred in admitting the testimony of two witnesses since they testified with respect to conversations which took place after this action was filed. A part of this testimony related to admissions made by the appellant, and while portions thereof may have been subject to this objection it appears that the trial court had this definitely in mind, and in view of the ample evidence which was properly before the court it cannot be held that the result was affected by such evidence, or that any possible error in this connection had any prejudicial effect.

■ Appellant's main contention is that the court erred in "failing to find specifically upon the issue of a property settlement between the parties" and that the evidence does not support the finding that the property described in the complaint was community property. With respect to this matter it appears that these parties, who were married in 1901, separated for a period of nineteen days in 1928, after which they were reconciled and lived together as husband and wife until 1938, when this action was begun. In her answer to the cross-complaint the respondent alleged that she had been informed that the appellant intended to rely upon a purported property settlement agreement which the parties had executed at the time of their separation in 1928, and further alleged that the parties had rescinded, abrogated and cancelled this purported property settlement agreement and at all times since 1928 had mutually understood that any and all property they then had or now have was to be community property. While the court did not specifically find that this purported property settlement had been rescinded or cancelled the matter was sufficiently covered in the general finding that the property in question was now the community property of the parties.

■ An agreement dated October 26, 1928, was introduced into evidence which recites that unhappy differences have arisen between the parties, that the parties are living separate and apart, and that they desire to settle their property rights. The agreement then provides that the home place is to be deeded to the appellant, that another piece of real property is to be deeded to the respondent, that the appellant will pay a certain debt of $600, that the household furniture is to be divided between them, that the appellant is to have a certain automobile and a certain barber shop with its equipment, and that the appellant will pay the respondent $15 a month until

a certain child reaches her majority. It appears that the home which was to be deeded to the appellant was of considerably more value than the other real property which was to be deeded to the respondent. Deeds to these respective pieces of real property, in accordance with the contract, were executed and recorded.

The respondent testified that she did not see an attorney during the nineteen-day separation in 1928; that a friend of her husband's took her to a man named Morrissey; that she did not know whether or not Morrissey was a notary public; that Morrissey prepared some papers but did not explain them to her; that he told her she had to sign them; and that she signed something but did not know what it was. She further testified that she could not read; that she "didn't understand"; that she did not know what was in the papers because "I didn't know how to read"; and that she thought she was signing "papers of the division." When asked who told her this she replied : "Nobody was speaking to me alone because we were there for a divorce." She further testified that at the end of the nineteen days her husband begged her to return, which she did, and that "the papers that were made about separating and everything, they were destroyed." A confidential relationship existed between these parties and the deeds which were executed and delivered should be considered a part of the agreement. It appears that the respondent was an uneducated woman with little knowledge of the English language and it is not surprising that she would not understand that the physical destruction of the papers was not all that should be done. Her testimony in connection with the execution and subsequent destruction of these papers is not denied and it justifies the inference that there was an intent to rescind and cancel the agreement and deeds.

Moreover, there is other evidence which supports this inference and indicates that the appellant himself did not consider the agreement and property division as still in force. The parties went back together and lived as husband and wife for ten years. Almost immediately after they were reconciled they borrowed $6000 on the home place and both signed the trust deed. Payments on this debt were made from family earnings and when this action was begun the debt was all paid except $240. There is evidence that the monthly payments on this loan were taken to the loan company by the

respondent or her daughter. During the ten years they were living together the appellant sold the other piece of real property which he had conveyed to the respondent and the cash proceeds from that sale were paid upon the indebtedness upon the home place. A note for $600, payable to both parties hereto, was taken from the purchaser of that other property and as payments thereon were made they were either paid upon the mortgage on the home place or were deposited in the appellant's bank account and mingled with his earnings. It is not without significance that the appellant did not carry out his part of the separation agreement made in 1928 other than to execute the deed to the respondent, which was done as a part of the execution of the agreement. He did not pay the $600 debt which he had agreed to pay and he did not pay the respondent $15 a month as he had agreed to do. Moreover, in the present action he claimed to be the owner of the note received in part payment for the real property which he had conveyed to his wife.

The evidence and the conduct of the parties rather conclusively show a rescission and cancellation of the separation agreement in question. In *Estate of Boeson,* 201 Cal. 36 [255 Pac. 800], the court said: "Property settlements entered into by the spouses, it is true, should be set aside in cases where the acts, conduct and relations of the parties thereafter are of such a character as to justify the conclusion that they intended and agreed orally to abrogate the same." In *Brown* v. *Brown,* 170 Cal. 1 [147 Pac. 1168], it is said:

"With regard to the separation agreement made by Brown and wife in 1906, which purported to release her rights in the community and to declare subsequently acquired property the separate property of the person acquiring it, and which it is claimed bars the present action of plaintiff, we need only say that the findings declare that some four months after its execution the parties agreed to become and were reconciled, that they thenceforth for several months lived and cohabited together as husband and wife, and that in pursuance of the agreement to so live they further orally agreed to and did set aside and annul said agreement. This was an executed oral agreement and it was a sufficient cancellation of the previous written agreement of separation."

The facts of the instant case, including the physical destruction of the contract and deeds and the continuance of the marriage relationship for the period of ten years, clearly

bring this case within the principles just referred to. (*Peters* v. *Peters,* 16 Cal. App. (2d) 383 [60 Pac. (2d) 313]; *Mundt* v. *Connecticut Gen. Life Ins. Co.,* 35 Cal. App. (2d) 416 [95 Pac. (2d) 966].)

It is also urged that the court abused its discretion in denying appellant's motion for a new trial. The only argument presented in this connection is that the evidence is not sufficient to sustain the ·findings. This has been sufficiently covered in our consideration of other points.

Finally, it is contended that the interlocutory decree is erroneous and in excess of the court's jurisdiction in that it undertakes to make a present award of property to the respective parties. While the court found as a fact that various property interests should be awarded to the respective parties the interlocutory decree uses such expressions as ''are awarded'' and ''is awarded'' in providing how the property is to be divided. It clearly appears that the trial judge intended to provide that the property should be divided and assigned to the respective parties in a particular manner but that this should be effective only upon the entry of a final decree.· The interlocutory decree specifically provides that at the time of entering the final decree ''the court shall grant such other and further relief as may be necessary to a complete disposition of this action.'' While this court could modify the interlocutory decree and affirm it as modified (*Remley* v. *Remley,* 49 Cal. App. 489 [193 Pac. 604]; *Strupelle* v. *Strupelle,* 59 Cal. App. 526 [211 Pac. 248]), it is not necessary to take this action under the circumstances here appearing. (*Webster* v. *Webster,* 216 Cal. 485 [14 Pac. (2d) 522].) The facts in the instant case are exactly similar to those in the case just cited in the respects here in question and the language used by the Supreme Court, appearing on page 493 of that decision, aptly covers the situation now before us.

The judgment is affirmed. Upon entering its final decree of divorce, the trial court will assign and dispose of the property in accordance with the determination expressed in the interlocutory decree.

Marks, J., and Griffin, J., concurred.