[Civ. No. 3430. Fourth Dist. July 6, 1946.]

GLEE WATERS, Respondent, v. WILLIAM L. WATERS, Appellant.

Harold A. McCabe for Appellant.

Winthrop O. Gordon for Respondent.

MARKS, J.—This is an appeal from portions of a judgment which awarded plaintiff an interlocutory decree of divorce, gave her attorney's fees and costs, a temporary monthly allowance and divided the community property of the parties.

Certain portions of the judgment appealed from are set forth in the notice of appeal as follows:

"It Is FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff and cross-defendant be and by this order is granted as her sole and separate property, with right of immediate possession thereto, the following parcels and pieces of property and each of them

"(a)  Here follows description of what is called the Long Beach property and its rentals.

"(b)  Here follows a description of the furniture, household goods and equipment in the Long Beach property.

"It Is FURTHER ORDERED, ADJUDGED AND DECREED that the parties hereto be and by this order are, and each of them is required concurrently with the entry of this judgment herein, to make and execute appropriate deeds and instruments of conveyance in order to effectuate the division of property herein provided."

Defendant also appealed from other portions of the interlocutory decree awarding plaintiff (1) a one-half interest in an attorney's fee involved in the case of *William L. Waters* v. *Laura B. Resh,* then pending in the Superior Court of Orange County, (2) a one-half interest in any fee to be received by defendant in the case of *Adolph W. Strudthoff, et al.* v. *Sydney Yates, et ux.,* decided in favor of defendants in the superior court and now on appeal, and (3) that portion of the interlocutory decree denying defendant either an annulment of his marriage to plaintiff or a divorce from her, "And that said defendant and cross-complainant take nothing by the judgment herein other than herein specifically provided."

Defendant specifically disclaims any intention of questioning the portion of the interlocutory decree under which plaintiff will ultimately obtain her divorce.

The trial judge found that defendant had been guilty of extreme cruelty towards plaintiff so that he was at liberty to award her any portion or all of the community property. (Civ. Code, § 146.)

The parties were married in Yuma, Arizona, on July 18, 1934. Defendant is a duly licensed attorney at law. He had three children, the issue of a former marriage, and owned separate property at the time of his marriage to plaintiff.

All receipts from both the separate property of defendant, and from the community, were handled by defendant and were commingled in a common bank account which he managed. He kept all accounts and records so we are entirely dependent on his records and testimony in determining the status of the title to any of the properties involved.

In 1938, defendant was retained by George S. and Edna Baker to represent them in certain litigation. He received as his fee an undivided one-half interest in the Long Beach property. That interest was conveyed to him by deed on or about December 9, 1938. This interest is admittedly community property. The other half interest in this property and its furnishings was acquired in July, 1939, for $870, the deed naming as grantees the parties to this action as joint tenants.

Defendant testified that the $870 which purchased the second half interest in the Long Beach property came from his separate estate and he argues that such half interest and the furniture should have been regarded as his separate property.

What is known as the Buena Park property was acquired for $500 in May, 1935. The deed named as grantees, the husband and wife as joint tenants. Defendant testified that the purchase price came from his separate estate and urges that this property should have been found to be his separate estate instead of giving a one-half interest to each.

Defendant prepared and introduced in evidence various statements which he testified were consolidations of books of account kept by him. Defendant's exhibit "M" lists what he evidently regarded as community property under the heading of "Community Income and Expense." This shows a gross community income from the Long Beach property from January 1, 1939, to August 18, 1944 (five days before the trial started), of $15,078.31. Against this is charged "Cost of one-half interest," "Alterations" and "Other expenses, furniture, upkeep and taxes" all totaling $15,168.86, leaving a net deficit of $87.55, after defendant had been repaid the $870 of his separate funds used to purchase the second half interest in the property, and the cost of all improvements, furnishings and expense had been deducted from income.

The Buena Park property is listed in the same exhibit, under the same heading, with a gross income between May 24,

1938, and August 18, 1944, of $3,544.03, against which is charged "Cost of Lot," "Alterations" and "Other expenses & upkeep," and "Furniture," all totaling $2,719.35. Thus after defendant had received back his $500, used as purchase price, and all improvements, cost of furniture and all other expenses and upkeep had been paid from the income, there remained to the community a profit of $824.68.

Defendant testified as follows concerning the agreement between himself and plaintiff at the time the second half interest in the Long Beach property was acquired:

"Then when this second deed came up, she says, 'I want you to put my name on that deed as joint tenants, or I will never sign any mortgage or anything about that property.' I said, 'This half interest I am buying with my own money, and it really is mine.' She said, 'I won't sign any deed.' I said, 'I can't do anything with the property unless your name is on it.' She said, 'I won't do anything about the property or sign any deed ever unless my name is put in as joint tenants.' I said, 'This property ultimately can be community property if and when the money I advance from my own personal and separate estate is paid off', and so that same thing came up about the Buena Park property."

Defendant further testified as follows as to the agreement of the parties at the time the Buena Park property was acquired:

"I said, 'I am buying this because we have no income except what I have and I necessarily have to put your name on or leave it in my own name, but if we are going to do anything with that as I contemplate doing we will have to raise some money on it one way or another, and we did, and that's what helped put the improvements upon it, and she insisted we put it in there as joint tenants, and I said, 'All right, but I am not making any gift of any of my own property to the community, but when the community pays off any advances I have made to it, then it will own the property free from the money I invested. She said, 'I am not making any claim to any of your separate property, but I want what we earn community.' I said, 'You will get it, you will have it, that will be easily shown at any time.' "

The same exhibit "M" shows that defendant received a gross income in fees from his law practice of $20,109.20 between July 18, 1934, and August 18, 1944, making a gross community income of $38,731.54. He also showed his gross

separate income, including sales of separate property, for the same period of $26,180.62. These moneys were all commingled in one bank account in defendant's name and were drawn upon by him indiscriminately as he saw fit.

The foregoing evidence fully justified the trial judge in concluding that a one-half interest in both the Long Beach and Buena Park properties should vest in each party hereto (*Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905]) and in awarding the furniture in the Long Beach property to plaintiff. (Civ. Code, § 146.)

A stipulation of counsel shows that after the marriage of the parties, Laura B. Resh employed defendant as her attorney to represent her in an action involving title to three parcels of real property and agreed in writing to give him a one-third interest in all property recovered; that Mrs. Resh was successful in that action; that the action of *Waters* v. *Resh* was brought to compel the delivery or conveyance to Waters of that one-third interest in the properties and to secure an accounting of their rents, issues and profits; that the case of *Waters* v. *Resh* had been tried and the trial court had directed judgment in Mr. Waters' favor but that findings had not been signed nor had judgment been entered at the time of the trial of the divorce action.

It is clear that the fee of a one-third interest in the real property involved in the first Resh case had been earned by defendant during his marriage with plaintiff so that it was community property. It became the duty of the trial court to provide for the division of that property in the divorce action. The fact that the case of *Waters* v. *Resh* had not been finally decided before the divorce action was tried becomes unimportant as the fee had been earned and was clearly community property.

The case of *Strudthoff* v. *Yates* involved property which belonged to the estate of John D. Strudthoff who died in 1936. Defendant was employed by the plaintiffs in that action, who were some of the children of the deceased, to recover part of the estate property. He took the case on a contingency of one-half of the property recovered. The case was tried in the superior court and judgment was entered for defendants. On appeal this court reversed that judgment (*Strudthoff* v. *Yates*, (Cal.App.) [162 P.2d 845]). The Supreme Court granted a hearing and the case is now pending in that court.

In dividing the community property of the parties the trial

judge gave plaintiff one-half of anything to be received by defendant in the Strudthoff case. If the Supreme Court affirms the judgment of the trial court neither plaintiff nor defendant will receive anything. If the judgment is reversed the cause will go back for new trial and may not be finally decided before the parties here are finally divorced. Defendant argues that all compensation for services rendered in that action after the final decree of divorce will be his separate property free from any claim of plaintiff. While this might be true, we do not believe the apportionment of the fee made by the trial judge to be unreasonable. The contract of employment under which the contingent fee, if any, will be earned, was made during coverture. The evidence for the plaintiff was assembled and the case was tried, the briefs on appeal were prepared and the case on appeal was argued while the parties were husband and wife. Thus a very considerable part of the ultimate compensation, if any, to be received by defendant must be credited to the community, even though we assume the soundness of his argument to the effect that a portion of the fee which may be earned after the dissolution of the marriage will be his separate property. The trial court could have set aside all community property to plaintiff as she will receive her divorce on the grounds of extreme cruelty. In support of the judgment we may assume that the trial judge regarded half of the entire fee to have been earned during coverture and therefore community property and that he awarded all of that community interest to plaintiff. This is not an unreasonable assumption and is sufficient to support this portion of the interlocutory decree of divorce.

Defendant argues other questions, such as the determination that a set of sterling silver is the separate property of plaintiff. If these matters are before the court at all, it is sufficient to say that the findings on these questions are supported by the evidence of plaintiff.

The only other point raised by defendant, necessary to consider, is that the interlocutory decree attempts to make an immediate division of the community property of the parties and orders them to immediately execute the necessary and proper "deeds and instruments of conveyance in order to effectuate the division of property herein provided." The final division of the community property should be made in the final and not in the interlocutory decree of divorce. This is an error which may be corrected on appeal without

a reversal of the judgment. (*Leupe* v. *Leupe*, 21 Cal.2d 145 [130 P.2d 697] ; *Lo Vasco* v. *Lo Vasco*, 46 Cal.App.2d 242 [115 P.2d 562] ; *Strupelle* v. *Strupelle*, 59 Cal.App. 526 [211 P. 248] ; *Prout* v. *Prout*, 73 Cal.App.2d 715 [167 P.2d 1].)

The interlocutory decree of divorce is modified by striking therefrom the following:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff and cross-defendant be and by this order is granted as her sole and separate property, with the right of immediate possession thereto, the following parcels and pieces of property and each of them," and inserting in lieu thereof the following:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff and cross-defendant should be, and in the final decree of divorce shall be given and awarded as her sole and separate property with the right of immediate possession thereof the following described real and personal property."

The interlocutory decree of divorce is further modified by striking therefrom the following:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant and cross-complainant be and by this order is granted as his sole and separate property with right of immediate possession thereto the following parcels and pieces of property and each of them :", and in lieu thereof inserting the following:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant and cross-complainant should be, and in the final decree of divorce shall be given and awarded as his sole and separate property with right of immediate possession thereof the following described real and personal property."

The interlocutory decree of divorce is further modified by striking therefrom the following:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties hereto be and by this order are, and each of them is required concurrently with the entry of this judgment herein, to make and execute appropriate deeds and instruments of conveyance in order to effectuate the division of property herein provided."

As so modified the interlocutory decree of divorce is affirmed, plaintiff to recover her costs on appeal.

Barnard, P. J., concurred.