Filed 3/17/25  Mantai v. Mantai CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MICHAEL MANTAI,<br><br>     Appellant,<br><br>v.<br><br>SURBJIT MANTAI,<br><br>     Respondent. | 2d Civ. No. B327479<br>(Super. Ct. No. 20FL00984)<br>(Santa Barbara County) |

Michael Mantai appeals from a dissolution judgment challenging the trial court's valuation and characterization of a community property business, post-separation business draw, and award of spousal support.  We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Michael and Surbjit[1] were married for 25 years, seven months.  They have one adult daughter.  They were both engineers when they married, but Surbjit stopped working when

_____

[1] We refer to the parties by their first names for clarity.

their daughter was born and did not return to work. During the marriage Michael formed System WorCx, a business specializing in building systems commissioning. He has continued to control and operate System WorCx since separation.

Less than a week after separation, Michael withdrew $425,000 from System WorCx, depositing the money into his separate accounts. He testified this draw was compensation because he had not paid himself in quite some time.

Prior to trial Surbjit agreed to submit to a vocational evaluation and a *Gavron*[2] warning was issued. Each party retained a forensic expert to analyze the marital standard of living and value System WorCx on a date proximate to separation (December 31, 2020), and a date proximate to trial (December 31, 2021).

Dissolution of marital status and a partial division of community assets occurred on April 8, 2021, by Stipulated Judgment. Between cash Surbjit received at separation and her share of assets awarded in the Stipulated Judgment, Surbjit had more than $2.6 million in cash, stocks, and mutual funds in her possession at time of trial.

A trial on reserved issues was conducted over eight days. At issue was the value of System WorCx, its valuation date, whether an *Imperato*[3] apportionment should be assigned to Michael, permanent spousal support, whether income should be imputed to Surbjit, and characterization of Michael's $425,000

---

[2] *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705.

[3] *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432 (*Imperato*).

post-separation draw.[4]  The trial court issued a statement of decision.  Michael filed written objections.  The trial court entered a Judgment on Reserved Issues incorporating its statement of decision (with one amendment irrelevant to this appeal).

## DISCUSSION

### *Valuation and Characterization of the Business*

#### *1.  Valuation Date*

In a marital dissolution, Family Code section 2550[5] requires trial courts divide a community estate equally.  Section 2552, subdivision (a) instructs courts to value community assets "as near as practicable to the time of trial."  (§ 2552, subd. (a).)  An exception exists where good cause demonstrates an earlier valuation date is necessary to "accomplish an equal division of the community estate."  (*Id.*, subd. (b).)

Applying the exception may be proper "'when the hard work and actions of one spouse *alone* and after separation, greatly increases the "community" estate which then must be divided with the other spouse.'"  (*In re Marriage of Priddis* (1982) 132 Cal.App.3d 349, 355.)  "[G]ood cause generally exists for a professional practice to be valued as of . . . separation" (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 625) but section 2552, subdivision (b) confers broad discretion on trial courts to value property on the date most appropriate to accomplish an equitable division of property.  (*Ibid.*)  The court must only find "good cause" to value an asset on an alternate date; it is not

---

[4] The other issues at trial are irrelevant to this appeal.

[5] Further undesignated statutory references are to the Family Code.

required to find an increase or decrease in the value was the result of the managing spouse's efforts. (§ 2552, subd. (b).)

"'The trial court's determination of the value of a particular asset is a factual one and as long as that determination is within the range of the evidence presented, we will uphold it on appeal.'" (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572.) "'"[W]e must accept any reasonable interpretation of the evidence which supports the trial court's decision."'" (*Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200, 222.)

Michael contends the trial court abused its discretion by failing to apply the section 2552, subdivision (b) exception to value System WorCx proximate to separation rather than trial because System WorCx is a small professional practice dependent "almost exclusively" on his "skill industry, guidance, and reputation." Though he and his expert testified the value of the business was primarily dependent on Michael's efforts, they also testified the business income is dependent on factors outside of Michael's control and COVID-19 negatively impacted the business in 2020. Additional evidence demonstrates System WorCx's success in 2021 turned in substantial part on work initiated prior to separation that did not come to fruition until 2021, as well as the efforts of Michael's employees who offer specialized knowledge, experience, and are the "boots on the ground."

Michael further asserts he is entitled to one hundred percent of the post-separation increase in goodwill because "ongoing goodwill based on a spouse's reputation and skill is that spouse's separate property." But increased goodwill "established while the parties were married and living together as husband and wife" belongs to the community. (See *In re Marriage of*

4

*Zaentz* (1990) 218 Cal.App.3d 154, 164 [movie profits are a community asset although movie completed after separation]; *In re Marriage of Marx* (1979) 97 Cal.App.3d 552, 561 [accounts receivable of medical practice are a community asset]; *Waters v. Waters* (1946) 75 Cal.App.2d 265, 270 [contingency fee received after separation is a community asset].) Evidence showed the goodwill calculated for 2021 was generated two to three years earlier, during the marriage, meaning Michael's pre-separation efforts, time, and energy were the main contributing factor to the 2021 increase in goodwill.

The trial court reasonably found applying the section 2552, subdivision (b) exception would be inequitable because it would "result in an artificially low valuation," and "a substantial windfall to [Michael] at the expense of the community." It found valuing the business proximate to trial was "most equitable," because "the business declined in 2020, due to forces beyond everyone's control (Covid) but it bounced back the following year, due largely to improvements in the economy." We conclude the trial court exercised proper discretion in determining there was no good cause to value the business at an earlier date.

### 2. Imperato *Apportionment*

Michael argues if the trial date valuation was proper, then the court abused its discretion by failing to make an *Imperato* apportionment, resulting in an award to Surbjit of his postmarital efforts and income in violation of section 771[6].

---

[6] Section 771 states in relevant part, "The earnings and accumulations of a spouse . . . after the date of separation of the spouses, are the separate property of the spouse." (§ 771, subd. (a).)

*In re Marriage of Imperato* held community property should be valued as close to the date of trial as possible, but if the facts justify apportionment, an increase in value after separation may be characterized as separate property. In such situations, the "apportionment formulas used in the landmark cases of *Pereira*[7] and *Van Camp*[8] would be applied in reverse." (*Imperato, supra,* 45 Cal.App.3d at pp. 438-439.)

The trial court found the company's increased value in 2021 "was not sufficiently attributable" to Michael's efforts and that "use of an *Imperato* calculation is inequitable." We conclude there is substantial evidence supporting the court's decision that the facts do not justify an *Imperato* apportionment. System WorCx employs multiple engineers who offer specialized knowledge and background, are an important part of the business, and whose efforts are critical to the projects they work on. They are highly trained in commissioning and have extensive experience in the field. The employees typically work through vacations, weekends, and outside regular business hours. Michael prioritizes the jobs he sends proposals for based on where his employees are located so they are comfortable and can spend time with their children. He pays competitive salaries and bonuses to avoid losing employees to headhunters.

Michael testified the philosophy of his business is "to be on the job site regularly during construction and collaborate with the construction team and owner to resolve issues early." His project proposals boast the benefit of being in "close proximity to

---

[7] *Pereira v. Pereira* (1909) 156 Cal. 1.

[8] *Van Camp v. Van Camp* (1921) 53 Cal.App. 17.

all of our clients" and discuss the "significant advantage [of having] highly experienced staff available . . . a short distance away from the project site." He testified it is important he advertise as being nearby a job site "[b]ecause that's what the clients see." Nearly all the company's business occurs in North and South Carolina where his employees live and offices are located. Michael lives in Nevada and travelled to the Carolinas once in 2021 and once in 2022. For the last few years the people on the job site are his employees, not him. Many of the projects that should have been completed in 2020 were delayed to 2021, so 2021 was an incredibly busy year. His own calculation revealed his efforts were responsible for less than half of the 2021 revenue.

Evidence showed the business increased in value by $1.7 million in 2021 and Michael was compensated $2 million dollars for his efforts. Reasonable compensation would have been between $145,000 to $180,000. During the same time period, Surbjit owned half the business, yet received no benefit from it. An *Imperato* apportionment on top of Michael's compensation would be a "double count."

On these facts, Surbjit's expert testified an *Imperato* apportionment does not make sense. The trial court agreed. "'It is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it.'" (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173.)

Michael contends we should not imply findings to support the judgment because he objected to the Statement of Decision by "asserting that the Court's findings 'fails to address the relevant case law that was presented,' and 'fails to address the testimony

7

and evidence that was presented at trial.'" But Michael did not claim the trial court failed to resolve a contested issue or the court's statement was ambiguous. He simply did not agree with the trial court's findings. "[A] party cannot avoid the application of the doctrine of implied findings by asserting 'objections' which merely disagree with the trial court's findings in its statement of decision." (*Slone v. El Centro Regional Medical Center*, *supra*, 106 Cal.App.5th at p. 1171.) We conclude Michael forfeited any claim the statement of decision is so deficient it prohibits applying the doctrine of implied findings.

*Characterization of Post-Separation Draw Was Proper*

Michael contends the trial court improperly counted the $425,000 draw twice because it considered the entire amount his income available for support when it calculated spousal support but then also found the entire amount community property subject to equitable division. The record does not support his contention.

The trial court did not consider the $425,000 draw in determining Michael's income available for support. Four months after separation the parties stipulated to temporary spousal support based on Michael's claimed average monthly income of $41,166. The average was calculated based on the last five years of marriage. The court's statement of decision states, "Michael claimed monthly income of $41,166.00 when temporary support was calculated . . . This $41,166.00 figure represented a five year average, which the court finds is appropriate under the circumstances." The court found $41,166 was Michael's monthly income available for spousal support.

8

*Spousal Support Award Was Proper*

For the first time on appeal, Michael asserts the trial court abused its discretion in awarding spousal support to Surbjit because section 4322 mandates "where there are no children, and a party has or acquires a separate estate, including income from employment, sufficient for the party's proper support, no support shall be ordered or continued against the other party." (§ 4322.) He argues the order must be reversed because the court failed to factor in Surbjit's "significant separate estate as reducing, if not eliminating, her need for support." He claims the support award ($14,500 per month) is excessive, the court's finding Surbjit is unable to work is not supported by substantial evidence, and the court failed to consider her refusal to work. His reply brief states evidence Surbjit could work was undisputed. We reject each of his claims.

"'Permanent spousal support "is governed by the statutory scheme set forth in sections 4300 through 4360. Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320." [Citations.] The statutory factors include the supporting spouse's ability to pay; the needs of each spouse based on the marital standard of living; the obligations and assets of each spouse, including separate property; and any other factors pertinent to a just and equitable award.'" (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 108.)

Family law courts have broad discretion to decide "'just and reasonable'" spousal support based on the marital standard of

9

living.  (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1366.)  We will not disturb the trial court's finding unless ""'where, considering all of the relevant circumstances, the court has 'exceeded the bounds of reason' or it can 'fairly be said' that no judge would reasonably make the same order under the same circumstances. [Citations.]"""  (*Ibid.*)

Michael's sole objection to the court's statement of decision regarding spousal support was "the controverted issue of whether [Surbjit] should be imputed income or if her employability should be considered as an offset to her 'needs.'"  His failure to object based on section 4322 deprived the trial court of the opportunity to clarify or supplement its decision before losing jurisdiction.  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130.)  We are not required to consider his claim but will exercise our discretion to do so because even if he had not forfeited, we would affirm.

"Whether an estate is sufficient for one's proper support is a fact question for the trial court."  (*In re Marriage of McNaughton* (1983) 145 Cal.App.3d 845, 850.)  Case law establishes spousal support recipients are not obligated to invade their share of community assets to provide for their reasonable support when the payor spouse has the ability to pay.  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 313.)  Moreover, the payor spouse cannot claim the payee spouse has a reduced need for support because the payee spouse has received money in the division of community assets.  (*In re Marriage of White* (1987) 192 Cal.App.3d 1022, 1030.)

The detailed statement of decision demonstrates the trial court exercised proper discretion by carefully weighing each section 4320 factor including Surbjit's ability and refusal to work, the marital standard of living, Michael's ability to pay, each

10

party's assets and liabilities, and the balance of hardships. The court considered testimony and evidence presented by the parties, witnesses, and three experts. Surbjit's expert testified the marital standard of living was $21,013 per month. Michael's expert testified it was $17,929. The court found the parties had an upper-middle-class lifestyle, living in nice homes in good neighborhoods, enjoying quality personal possessions, clothing, and automobiles, but found both experts overstated their needs. It recognized each party would receive "a substantial share of community assets" with Michael maintaining control of System WorCx and earning a substantial income. It found community liabilities were "relatively modest and should not affect [Michael's] ongoing ability to pay support."

Evidence demonstrated Michael's income at trial was between $71,000 and $99,000 per month with monthly expenses of $15,618. The court decided a five year average of his marital income, based on the amount he claimed, was more appropriate for calculating spousal support. It found Surbjit is "highly resistant" to becoming employed, but that she has not worked in over twenty years, does not drive, claims health issues limit her employability, and even with retraining and additional education, her need for support would not be significantly reduced.

Michael is not entitled to a "disproportionately higher standard of living" than Surbjit and any argument she could comfortably live with less should have been made to the trial court. Given all the evidence and testimony, "another judge could reasonably make the same order under the same circumstances." (*In re Marriage of McNaughton, supra*, 145 Cal.App.3d at pp. 851-852.)

11

## DISPOSITION

Judgment is affirmed.  Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED.


CODY, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

The Honorable Colleen K. Sterne, Judge
Superior Court County of Santa Barbara

_____

Law Office of Stephanie J. Finelli, Stephanie J. Finelli, for Appellant.

Griffith & Thornburgh,  John R. Rydell II and Lauren A. Rode, for Respondent.